IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| EMILY HOFBAUER and HELENE HOFBAUER, | ) ) ) | No. 41085-4-III (Consolidated with No. 41106-1-III) |
| Appellant, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| KEVIN DEMENT and JANE DOE DEMENT, husband and wife; JESSICA HORST and JOHN DOE HORST, wife and husband; Premier Mortgage Resources, LLC, | ) ) ) ) ) ) | |
| Respondent. | ) ) | |

STAAB, C.J. — This consolidated case arises from a boundary dispute between neighbors in Kennewick, Washington. After obtaining a property survey that showed a discrepancy between fence lines and boundary lines, Emily and Helene Hofbauer[1] filed a complaint to quiet title naming their neighbor to the east, Jessica Horst, and their neighbor to the west, Kevin Dement. In response, Horst asserted a counterclaim for adverse possession and Dement asserted a counterclaim for ejectment. Horst prevailed

---

[1] Because they share the same surname, we refer to Helene and Emily collectively as "the Hofbauers" and individually by first name to avoid confusion. No disrespect is intended.

on summary judgment and the court awarded her attorney fees. Dement prevailed at trial, following the Hofbauers' voluntary dismissal of their complaint, and the court awarded him attorney fees as well.

The Hofbauers appeal from the judgment in favor of Dement for ejectment and the orders granting Horst and Dement their attorney fees. They contend the court erred by ordering ejectment because it: (1) failed to conduct the requisite *Arnold*[2] analysis, (2) relied on the property survey, which was not admitted into evidence, and (3) improperly applied judicial estoppel to preclude Helene's trial testimony. The Hofbauers also argue the court lacked statutory authority to award Horst and Dement their attorney fees. Alternatively, the Hofbauers argue the court abused its discretion because the attorney fee awards were unreasonable.

We affirm and grant Horst and Dement their reasonable attorney fees on appeal.

BACKGROUND

In 2019, the Hofbauers acquired residential property in Kennewick, Washington situated between two other residential properties—Dement's property to the west, and Horst's property to the east. Each of the neighboring properties are separated from the Hofbauers' property by a fence.

---

[2] *Arnold v. Melani*, 75 Wn.2d 143, 449 P.2d 800 (1968).

The Hofbauers had their property surveyed in October 2023. The survey showed that both the western fence line and the eastern fence line were situated a few feet west of the legally described boundary lines.

In January 2024, the Hofbauers filed a complaint to quiet title, naming Dement and Horst as defendants. The Hofbauers alleged adverse possession—that they and their predecessors had openly and continuously possessed the strip of land along the western boundary, marked by the fence, and that the fence had existed since at least 2012. The complaint did not state a cause of action or request for relief specific to Horst, her property, or the eastern boundary line.

Dement and Horst engaged attorney Megan Nutley to represent them in the action. In his answer, Dement denied the adverse possession claim and counterclaimed for an injunction for ejectment because the Hofbauers' fence encroached onto his property. Horst also answered, stating the Hofbauers could not have adversely possessed her property because the Hofbauers were not encroaching on it. She counterclaimed for adverse possession, alleging her fence encroached onto the Hofbauers' property and she had satisfied the elements of adverse possession as to that area.

Horst served interrogatories on the Hofbauers during discovery and asked: "Please state with specificity what causes of action are being asserted against Defendant Jessica Horst." Clerk's Papers (CP) at 234. The Hofbauers responded: "Adverse Possession, damages." CP at 234.

3

Horst and Dement moved for summary judgment. Horst argued the Hofbauers could not maintain a claim of adverse possession against her because they were not encroaching on her property. She further argued that she satisfied the elements for adverse possession because her fence encroached onto the Hofbauers' property since 2007. The Hofbauers conceded, admitting they could not produce evidence to the contrary. Accordingly, the court granted Horst's motion, quieting title for the eastern encroachment area and dismissing the Hofbauers' complaint against her.

The court denied Dement's motion, noting there were genuine issues of material fact regarding the location of the fence between his property and the Hofbauers' property.

The remaining claims between the Hofbauers and Dement proceeded to trial. In pre-trial conference, after the court excluded the Hofbauers' expert, the Hofbauers moved to voluntarily dismiss their complaint against Dement under CR 41. The court granted the Hofbauers' dismissal without prejudice over objection and confirmed that trial would proceed on Dement's counterclaim for ejectment.

*Trial on Dement's Counterclaim for Ejectment*

At trial, Dement testified that prior to his or the Hofbauers' ownership of their respective parcels, "there was a fence that was in ill repair that was half knocked down" separating the properties. Rep. of Proc. (RP) at 136. He testified that soon after the Hofbauers acquired the neighboring property, they removed what remained of the old fence and put up another one. Dement was unsure whether the Hofbauers erected their

4

fence in the same location as the previous one or if the fence line had been moved. Dement also testified that he knew where his property line was because of the Hofbauers' survey. He stated that the Hofbauers' fence line was located on his side of the boundary line.

Helene testified next. She stated the existing fence was located on the same fence line as the prior one. She explained that the old fence was modified and rebuilt but it had not been removed.

Nutley then asked Helene whether she filed an adverse possession claim against Dement because the fence line encroached on his property. Helene replied: "No. . . . There was boundary issues on all three sides of that property. That's why I had it surveyed. . . . [Dement's] property was never a concern." RP at 151-52. Nutley clarified, "[s]o the boundary line between your property [and Dement's] property, you don't know if there's an encroachment?" RP at 152. Helene responded, "I don't, no." RP at 152.

Nutley introduced Helene's sworn declaration dated December 2, 2024, for impeachment purposes. Helene's prior statement asserted that although she believed in 2019 that the fence was located on the boundary line, the 2023 survey revealed it was between 1.83 and 4.06 feet west of the boundary line. Nevertheless, Helene testified that her current testimony was correct; she maintained that she was unaware of whether the fence encroached on Dement's property.

5

Emily also testified. She first stated that the fence between her property and

Dement's property was located on the boundary line. She explained that her

understanding was based on representations the realtor made in 2019. Emily then

testified that she discovered the fence was not situated on the boundary line later in 2019

after they purchased the property and began repairing the fence. She also stated that she

did not recall if she initially asserted an adverse possession claim against Dement. She

also did not recall voluntarily dismissing the claim less than one month prior.

Based on the parties' stipulation, the court admitted to evidence the quit claim

deed conveying Dement his property in 2019. No other documents or exhibits were

admitted.

*Findings of Fact and Conclusions of Law*

The court granted Dement his requested injunction for ejectment and ordered the

Hofbauers to remove the encroaching fence line. It issued written findings of fact and

conclusions of law. Relevant to this appeal, the court found:

> 3. The Plaintiffs initiated the above-entitled cause on January 29, 2024
> against Defendant Kevin Dement to quiet title by adverse possession as to a
> wooden fence which Plaintiff's [sic] stated in their Complaint was found by
> a survey to be on Dement's property, and not on their own property.
> . . . .
> 13. Plaintiff Helene Hofbauer previously had averred, through her attorney
> in her Complaint for adverse possession, and in a sworn declaration filed
> December 2, 2024, that she believed that the wooden fence at issue in the
> trial was, in fact, on Defendant Dement's property, based on a survey she
> and her sister had commissioned.

6

14. Plaintiff Emily Hofbauer testified that when she and her sister bought the property, they were told by the realtor that the wooden fence was on their property, but they later learned that the fence was on Defendant's Dement's property.

15. Plaintiff Emily Hofbauer's testimony was not clear as to how she came to believe that the fence was on Defendant Dement's property, but she did not dispute that the fence was on Defendant Dement's property.

16. No testimony or evidence was submitted as to the exact location of the fence, but there was no dispute in the evidence that the fence is on the property owned by Defendant Dement.

17. There was no evidence submitted as to the cost of removing or re-locating the fence onto the Hofbauer's [sic] property, or as to the fair market value of Dement's land encroached upon.

CP at 603-05.

Based on those findings, the court concluded, in relevant part:

2. Judicial estoppel prevents the Plaintiffs from taking the inconsistent position at trial that they "did not know" or "were not sure" if the fence was on the Defendant's land when they made such assertion in their own Complaint which started the litigation in the first place. The Court finds no credibility with Plaintiff Helene Hofbauer when she testified that she "did not know" if the fence was on Defendant Dement's land or not, when she had previously stated in court filings that the fence is, in fact, on Defendant Dement's land. Simply dismissing the Plaintiffs' adverse possession claim prior to trial does not allow the Plaintiffs to then take a contrary position at trial which would work an inequity and injustice on the Defendant.

3. There is no dispute of facts that the wooden fence repaired by the Hofbauers in or about 2019 is on land owned by Defendant Kevin Dement, and that Defendant Dement, and only Dement, has superior title to that land.

CP at 605.

In conclusions of law five and six, the court quoted case law providing that a

mandatory injunction for ejection should not be issued as a matter of course; the court

7

must reason through the *Arnold* analysis to achieve fairness between parties. The court

listed the *Arnold* elements, then concluded:

> There are no facts before the Court which would suggest that the traditional property rule that a landowner has an absolute right to eject a trespasser should not apply in this case. There is no information before the court that would suggest that removing a wooden fence is impractical, or that there is an enormous disparity in resulting hardships. Because the *Arnold* test uses the injunctive [sic] "and," all elements must be met in order for the court to find that an equitable solution other than mandatory ejectment should issue, which is not the case here.

CP at 606.

The judgment for ejectment was filed one week later and identified Dement's

property by its legal description, consistent with the quit claim deed.

*Horst Requests Attorney Fees*

Horst moved the court for an award of attorney fees and costs incurred in her

defense of the Hofbauers' initial adverse possession complaint and pursuit of her

counterclaim. She cited RCW 7.28.083, which permits a just and equitable fee award to

the prevailing party in an action asserting adverse possession. Horst's motion was

accompanied by Nutley's declaration, which included billing records and an explanation

of certain entries. Nutley identified various timekeepers and their respective billing rates.

As the attorney of record for both Horst and Dement, Nutley also explained how costs

and fees were allocated between clients. She noted that some of the time was split

equally between them and other entries were allocated 70 percent to Dement and 30

percent to Horst. Nutley stated that she thoroughly examined each transaction to properly

allocate each cost or fee to each claim and client appropriately.

The Hofbauers did not object to any specific billing record or entry; rather they

opposed Horst's motion in its entirety, arguing that she was not entitled to attorney fees

because the Hofbauers' claim for adverse possession was asserted only against Dement

and Horst's counterclaim was not compulsory. Horst replied that if the Hofbauers

maintained their position that there was never a claim against her—notwithstanding that

she was named as a defendant and served the summons and complaint—then she should

be granted fees as sanctions under CR 11.

The court heard argument regarding whether Horst was eligible for fees under

RCW 7.28.083 or as sanctions. The Hofbauers argued "there was no claim for relief

against Ms. Horst in the petition," and then conceded "that to the extent there was a claim

against her, it was resolved in her favor at summary judgment." RP at 59. The court

stated:

> And so the Court is persuaded that either one of two things is true. Either there wasn't a claim against Ms. Horst in the first instance because the complaint didn't allege it, the request for relief didn't identify her, in which case there was no basis in fact or in law against Ms. Horst; or there was a claim alleged against Ms. Horst as buttressed by the response to interrogatories which was cited by Ms. Nutley and not objected to by Mr. Riley as being a proper component of their propounded discovery. So either A or B is true.
>
> In my view, I think the better read is that B is true, that a suit was undertaken, it was taken undertaken deliberately. There was a deliberate

9

> choice to include Ms. Horst in the complaint, and it was reasonable for Ms. Horst to believe that she was a party to the action and a party to the adverse possession legal issue and dispute in the complaint.

RP at 66-67.

Next, the court considered whether Horst's fee request was reasonable under the lodestar method. It reviewed the billing records and noted that the allocation between Dement and Horst seemed reasonable. The court considered whether certain fees for services rendered by non-lawyers were appropriately included as attorney fees. It recited six relevant factors for consideration, such as the qualifications of the person performing the service and the nature of such services. The court pointed to the requested fees for paralegal services and inquired as to Nutley's paralegal's qualifications.

Finally, the court found that an award of fees would be just and equitable because the original claim made against Horst was very weak, whereas her counterclaim—having prevailed on summary judgment—was strong.

The court tentatively granted Horst's request for a fee award. It directed Nutley to supplement her declaration with the paralegal's qualifications. It also allowed for the Hofbauers to submit additional briefing regarding whether a court must consider the parties' respective financial situations when determining if an award is just and equitable.

At the second hearing, the Hofbauers indicated that they did not find any additional information with which to supplement the record. Nutley filed an amended

10

declaration to show the updated fee total and addressing the court's inquiry into the paralegal's qualifications. The court stated:

> The Court does recall, when we were here last, the Court went through a [l]odestar analysis relative to the attorney fees, did undergo the [l]odestar analysis as well as the question about paralegal time. Those qualifications have been set forth now by averment. I've reviewed that. I now find that the paralegal is qualified and the time asserted is not ministerial in nature, but legal in nature. So the fees are awarded. They're reasonable.

RP at 114.

### *Dement Requests Attorney Fees*

Dement also moved for an award of attorney fees under the same statute. He sought fees for defending against the Hofbauers' complaint, including pursuit of his counterclaim for ejectment. The motion was accompanied by Nutley's declaration and billing records. The declaration mirrored the declaration filed with Horst's request and similarly explained the allocation of fees between the two defendants. Nutley stated she reviewed each line item to make sure everything was properly billed in the correct allocation to each client.

The Hofbauers opposed Dement's motion for fees, arguing that he was not a prevailing party in a claim for adverse possession because the Hofbauers had voluntarily dismissed their complaint. They further stated that "[t]he time asked for was a little confusing." RP at 192. They alleged that some time was duplicative or based on losing motions and should not be awarded.

11

At the hearing, Nutley reaffirmed to the court that there were no duplicative entries nor was any of Horst's time shown on Dement's billing records. She further argued that fees should be awarded for the unsuccessful motion practice because such motions were necessary efforts to defend against the claim. She finally explained that her proposed order included an updated declaration because certain time was noted as "anticipated" in the first declaration.

After taking the matter under advisement, the court granted Dement's motion for fees in a lengthy written ruling. The court concluded that Dement was the prevailing party in the Hofbauers' claim against him for adverse possession. Then, it set out the rules for the "lodestar" method as well as rules regarding paralegal or nonattorney work. After extensive discussion and calculations, the court awarded Dement a large portion of the fees he requested but declined to award the paralegal fees. The court explained that the paralegal's hours were not sufficiently summarized for inclusion in the lodestar calculation and that many entries appeared non-legal in nature. However, it found the overall fees just and equitable, determined that the allocations between defendants were fair and appropriate, and noted that those allocations were uncontested. The court also considered whether time spent on unsuccessful motion practice should be excluded and concluded that such time was properly included in the award.

The Hofbauers appeal.

ANALYSIS

1.   *ARNOLD* ANALYSIS

The Hofbauers argue the court committed reversible error by ordering ejectment

of their fence from Dement's property without first conducting a proper *Arnold* analysis.

They further contend that because each *Arnold* element was supported by clear and

convincing evidence, the court should have found an equitable exception to ejectment.

Dement argues the court made sufficient findings and was not required to analyze the

*Arnold* elements extensively because the Hofbauers neither raised nor argued *Arnold*

below.  The Hofbauers reply that the trial court had an affirmative, independent duty to

apply *Arnold* regardless of whether the encroaching party asserted the theory.  We agree

with Dement.

"The right to eject an unlawful encroaching structure is among the most precious

contained within the bundle of property rights."  *Garcia v. Henley*, 190 Wn.2d 539, 540,

415 P.3d 241 (2018).  "In exceptional circumstances, when equity so demands, a court

may deny an ejectment order and instead compel the landowner to convey a property

interest to the encroacher."  *Id.*  To support such an order, the court must reason through

the *Arnold* elements:

> [A] mandatory injunction can be withheld as oppressive when . . . (1) The
> encroacher did not simply take a calculated risk, act in bad faith, or
> negligently, willfully or indifferently locate the encroaching structure; (2)
> the damage to the landowner was slight and the benefit of removal equally
> small; (3) there was ample remaining room for a structure suitable for the

13

area and no real limitation on the property's future use; (4) it is impractical to move the structure as built; and (5) there is an enormous disparity in resulting hardships.

*Arnold*, 75 Wn.2d at 152. "An encroacher bears the burden of establishing the existence of each *Arnold* element by clear and convincing evidence before a trial court may deny a landowner an injunction ordering ejectment of an encroaching structure." *Garcia*, 190 Wn.2d at 545.

Ejectment is an equitable remedy. *Arnold*, 75 Wn.2d at 152. We review the court's equitable decision for abuse of discretion. *In re Foreclosure of Liens*, 123 Wn.2d 197, 204, 867 P.2d 605 (1994). A court abuses its discretion by exercising it on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

We review findings of fact and conclusions of law for whether substantial evidence supports the trial court's findings and, if so, whether the findings support the conclusions of law. *Scott v. Trans-Sys., Inc.*, 148 Wn.2d 701, 707-08, 64 P.3d 1 (2003). Substantial evidence is defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true. *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000).

Here, the court explicitly acknowledged its duty to reason through the *Arnold* elements before ordering ejectment. The court found that at least two of the elements were not met: "There is no information before the court that would suggest that removing

14

a wooden fence is impractical, or that there is an enormous disparity in resulting

hardships." CP at 606. This finding is supported by a careful review of the record which

revealed no clear and convincing evidence to the contrary. Because the court performed

an *Arnold* analysis and because the record supports its conclusion that the elements were

not satisfied with clear and convincing evidence, we conclude the court did not abuse its

discretion.

The Hofbauers contend that each of the five elements were proved with clear and

convincing evidence because inferences can be drawn in their favor from the *absence* of

evidence. For example, they state there is no evidence the Hofbauers acted in bad faith,

no evidence that Dement would suffer more than slight harm, and no evidence the fence

materially impeded Dement's use of his property. These arguments misconstrue the role

of *Arnold* and the Hofbauers' burden of proof.

The law presumes that an owner is entitled to ejectment. A court may only deny a

landowner's "right to eject an unlawful encroaching structure . . . [i]n exceptional

circumstances, when equity so demands." *Garcia*, 190 Wn.2d at 540. To warrant an

exception, the encroacher must prove all five *Arnold* elements with clear and convincing

evidence. *Id.* at 545. "If this burden is not carried, failure to enter an otherwise

warranted ejectment order is reversible error." *Id.* at 540.

Contrary to their position, the absence of evidence demonstrates where the

Hofbauers failed to meet their burden of proof. For example, the court found "[t]here

was no evidence submitted as to the cost of removing or re-locating the fence onto the Hofbauer's [sic] property, or as to the fair market value of Dement's land encroached upon." CP at 605. This was the Hofbauers' burden to prove, not Dement's.

Nevertheless, instead of arguing *Arnold* below and soliciting the necessary testimony to prove each element, the Hofbauers now request we retroactively impose a duty on the trial court to make numerous inferences in their favor based on a scant record. This we cannot do. *See In re the Parental Rts. to C.G.*, No. 38863-8-III, slip op. at 33 (Wash. Ct. App. Apr. 6, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/388638_unp.pdf ("'No evidence' cannot satisfy the burden to present clear, cogent, and convincing evidence.").

The Hofbauers further contend the court erred by ordering ejectment in a mechanical fashion without adequate findings that the *Arnold* factors were unmet. Indeed, "removal of an encroaching structure . . . is not to be issued as a matter of course . . . the court must grant equity in a meaningful manner, not blindly." *Arnold*, 75 Wn.2d at 152. Here, however, the court's findings and conclusions specific to *Arnold* elements demonstrate its decision was not made mechanically or as a matter of course. Additionally, the court was not required to expressly find that each element was unmet; instead, "[t]he absence of findings of fact relating to the *Arnold* elements is equivalent to a finding of their absence." *Garcia*, 190 Wn.2d at 545.

16

The court did not abuse its discretion because it properly applied *Arnold* before

ordering ejectment.

2.    RELIANCE ON THE PROPERTY SURVEY

Next, the Hofbauers argue the court committed reversible error by relying on their

property survey, which was not admitted into evidence, to supply a legal description of

the property and to assess witness credibility.  We disagree.

We presume that trial judges, because they are knowledgeable about evidence

rules, will separate admissible from inadmissible evidence.  *State v. Miles*, 77 Wn.2d 593,

601, 464 P.2d 723 (1970).  This presumption is rebuttable and may be overcome on a

showing that the trial court's decision is not supported by sufficient evidence or by

showing the trial judge relied on evidence that had not been admitted to make essential

findings that it otherwise would not have made.  *State v. Read*, 147 Wn.2d 238, 245-46,

53 P.3d 26 (2002).

We begin with the presumption that the trial court did not rely on the unadmitted

survey in its findings and conclusions.  The Hofbauers offer two arguments to rebut this

presumption.  Each is discussed in turn.

First, the Hofbauers allege the court adopted the survey's legal description as the

operative basis for the ejectment order because the record contained no other admitted

17

evidence of the legal description.[3] This argument fails because it is factually inaccurate. Based on the parties' stipulation at trial, the court admitted into evidence the quit claim deed conveying Dement his property in 2019. The legal description contained in the judgment for ejection matches the legal description contained in the quit claim deed verbatim. As such, the legal description in the ejection judgment is supported by sufficient evidence.

Second, the Hofbauers contend the court demonstrated errant reliance on the survey when assessing Helene's credibility. The relevant finding provides:

> 13. Plaintiff Helene Hofbauer previously had averred, through her attorney in her Complaint for adverse possession, and in a sworn declaration filed December 2, 2024, that she believed that the wooden fence at issue in the trial was, in fact, on Defendant Dement's property, *based on a survey* she and her sister had commissioned.

CP at 652 (emphasis added).

This finding establishes the fact that Helene previously stated she believed the fence was on Dement's property. The reference to the survey provides the purported source of Helene's belief. However, there is no indication that the source of Helene's belief was an essential finding—the survey is not referenced in subsequent findings or conclusions. Rather, the essential fact concerns Helene's previous inconsistent statement. Moreover, the survey did not need to be admitted into evidence for the court to

---

[3] The Hofbauers do not challenge the accuracy of the legal description.

18

acknowledge its existence. Helene testified that she had the property surveyed because of the boundary issues. Dement testified that his knowledge of the boundary line was based on the Hofbauers' previous surveys.

As such, the Hofbauers fail to show the trial court relied on evidence that had not been admitted to make essential findings that it otherwise would not have made.

3. JUDICIAL ESTOPPEL

The Hofbauers contend the court erred by applying judicial estoppel to preclude Helene's trial testimony because their change in position regarding the existence of an encroachment did not prejudice Dement, nor did he rely on their previous position. Dement argues the court was correct to disallow Helene's contradictory testimony because the elements of judicial estoppel were satisfied and the prior testimony was instrumental in defeating Dement's motion for summary judgment.

We review a trial court's application of the judicial estoppel doctrine for abuse of discretion. *Miller v. Campbell*, 164 Wn.2d 529, 536, 192 P.3d 352 (2008). We will not disturb the trial court's decision absent a clear showing that it exercised its discretion on untenable grounds or for untenable reasons. *Id.*

"'Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" *Id.* at 539 (internal quotation marks omitted) (quoting *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007)). "The doctrine serves three

19

purposes: (1) to preserve respect for judicial proceedings, (2) to bar as evidence statements by a party that would be contrary to sworn testimony the party gave in prior judicial proceedings, and (3) to avoid inconsistency, duplicity, and waste of time." *Skinner v. Holgate*, 141 Wn. App. 840, 847, 173 P.3d 300 (2007). "Although judicial estoppel may not apply in cases of simple error or inadvertence, deliberate or intentional manipulation, which can be inferred from the record, mandates such a ruling." *Id.* at 853-54.

"The determination of whether to apply judicial estoppel focuses on three core factors:"

> (1) whether 'a party's later position' is 'clearly inconsistent with its earlier position'; (2) whether 'judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled'; and (3) 'whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'

*Miller*, 164 Wn.2d at 539 (internal quotation marks omitted) (quoting *Arkison*, 160 Wn.2d at 538). These factors guide the court but do not exhaustively define the analysis. *Chonah v. Coastal Vills. Pollock, LLC*, 5 Wn. App. 2d 139, 148, 425 P.3d 895 (2018). The court may be guided by additional considerations, which is "entirely appropriate in light of the flexible, fact-based nature of the equitable doctrine of judicial estoppel." *Id.* "We may affirm on any ground the record adequately supports." *Skinner*, 141 Wn. App. at 849.

20

Here, the court applied judicial estoppel to bar Helene's trial testimony that she "did not know" whether the fence was encroaching on Dement's property. CP at 653. We conclude the court's application of the doctrine is supported by the record and the court's unchallenged findings of fact. *See Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002) (unchallenged facts are verities on appeal).

Beginning with the first factor, Helene's later position was clearly inconsistent with her earlier position. The Hofbauers initiated the original lawsuit against Dement to quiet title by adverse possession. They stated a property survey revealed that their wooden fence was on Dement's property and not their own. In a sworn declaration filed almost one year later, Helene stated again that she believed the fence was on Dement's property.

The Hofbauers voluntarily dismissed their claim for adverse possession against Dement, and trial on his counterclaim for ejectment started a few weeks later. At trial, Helene testified that she did not know whether the wooden fence was on Dement's property or her own. This testimony was diametrically opposed to her earlier position, which affirmatively asserted that the fence was encroaching. As such, the first factor is satisfied.

Regarding the second factor, if the trial court accepted Helene's later position, it would create the perception that the previous court was misled. Dement moved, unsuccessfully, for summary judgment on the Hofbauers' claim for adverse possession

and his counterclaim for ejectment.  To survive summary judgment, the Hofbauers were required to make a prima facie showing of each element of adverse possession.[4]  *See Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989).  They were required to "set forth specific facts showing there [was] a genuine issue for trial."  CR 56(e).  If the Hofbauers' position on summary judgment was that they "did not know" whether the fence was encroaching on Dement's property, they would have failed to meet their burden.

The Hofbauers argue the court erred because it did not make a specific finding regarding the second factor.  This argument is unpersuasive.  The analysis centers on three core factors, but the court retains broad discretion to conduct a "flexible" inquiry and consider additional factors because judicial estoppel is an equitable doctrine.  *Chonah*, 5 Wn. App. 2d at 148.

As for the third factor, the Hofbauers would derive an unfair advantage if they were permitted to assert an inconsistent position.  Ejectment is an action to recover possession of real property from a party wrongfully possessing it.  *See* RCW 7.28.010.  Helene's earlier position admitted possessing the real property in question.  As explained above, such admission was necessary to establish their claim for adverse possession.  If

---

[4] A claimant's possession of land must be exclusive, actual, and uninterrupted, open and notorious, and hostile for at least 10 years.  *ITT Rayonier, Inc. v. Bell*, 112 Wn.2d 754, 757, 774 P.2d 6 (1989).

permitted to assert her inconsistent position, Helene would effectively withdraw her concession of the possession element of ejectment and place the burden of proof back on Dement. As such, the Hofbauers would derive an unfair advantage and Dement would suffer unfair detriment.

The Hofbauers contend the court erred because Dement did not rely on the Hofbauers' previous position. The Hofbauers cite to *American Jurisprudence 2d*,[5] to support their argument. Appellant's Br. at 34. However, "[t]he majority of courts that have considered the matter have concluded that privity of the parties, reliance, and prejudice—generally recognized elements of estoppel—are inapplicable to the doctrine of judicial estoppel." *Johnson v. Si-Cor, Inc.*, 107 Wn. App. 902, 907-08, 28 P.3d 832 (2001). This court has reasoned that "because the doctrine of judicial estoppel is designed to protect courts, courts should not impose elements of related doctrines like equitable and collateral estoppel, which are intended primarily to protect litigants." *Id.* at 908. In sum, "the doctrine may be applied even if there is no reliance." *Id.*

Finally, the Hofbauers argue that the court's improper application of judicial estoppel requires reversal because it enabled the court to find the fence was on Dement's land. We disagree. Whether or not the court applied judicial estoppel, it first found that Helene's testimony was not credible. This conclusion finds support in the record because

---

[5] 28 AM. JUR. 2D *Estoppel and Waiver* § 2.

23

Helene was impeached at trial with her previous sworn declaration. Although Helene maintained that her current testimony was correct and she was unaware of whether the fence encroached on Dement's property, the court, as the trier of fact, was positioned to assess Helene's credibility and weigh her testimony against other evidence—including the competing testimony from both Dement and Emily that the fence was encroaching. We will not disturb the court's credibility determinations on appeal. *See State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). Nor did the Hofbauers assign error to the court's finding that "the fence is on the property owned by Defendant Dement." CP at 653.

The court's application of judicial estoppel was not an abuse of discretion.

4. AWARD OF ATTORNEY FEES

The Hofbauers contend the court erred by awarding Horst and Dement their attorney fees for numerous reasons. They argue that neither Horst nor Dement was eligible for a fee award for defending against the Hofbauers' complaint or for pursuing their individual counterclaims. They further contend that if a fee award was permissible, the court abused its discretion by failing to conduct a proper lodestar analysis and the fee awards were unreasonable.

A prevailing party may recover attorney fees if they are authorized by statute, equitable principles, or agreement between parties. *Wiley v. Rehak*, 143 Wn.2d 339, 348, 20 P.3d 404 (2001).

24

Here, the trial court awarded fees under RCW 7.28.083(3), which provides:

> The prevailing party in an action asserting title to real property by adverse possession may request the court to award costs and reasonable attorneys' fees. The court may award all or a portion of costs and reasonable attorneys' fees to the prevailing party, if, after considering all the facts, the court determines such an award is equitable and just.

We first review whether there is a legal basis for awarding attorney fees by statute de novo. *Park Place Motors, Ltd. v. Elite Cornerstone Constr., LLC*, 18 Wn. App. 2d 748, 753, 493 P.3d 136 (2021). Then, we review the reasonableness of the fee awards for abuse of discretion. *Id.*

### A. Award of attorney fees to Horst

The Hofbauers contend the trial court improperly awarded Horst attorney fees for both defending against the Hofbauers' original claim and pursuing her own claim of adverse possession. They argue the complaint did not contain any cause of action against her; thus, any legal work defending against the complaint was unnecessary. Additionally, the Hofbauers assert that Horst was not entitled to fees for her counterclaim because it was permissive rather than compulsory.

Horst raises two alternative defenses to the award of fees. Either the complaint raised a claim of adverse possession, or it failed to make any claim at all, in which case it was frivolous and forms the basis for sanctions.

On two separate occasions, the trial court made rulings that entitled Horst to attorney fees for prevailing against a claim of adverse possession brought by the

25

Hofbauers.  First, in the order granting Horst's motion for summary judgment, the court

held: "Plaintiffs have failed to satisfy their burden of proof establishing they adversely

possessed any portion of the Horst property, and therefore, Defendants' Motion for

Summary Judgment is granted dismissing Plaintiffs' claim for adverse possession against

Defendant Jessica Horst."  CP at 297.  The Hofbauers neither appealed from this order[6]

nor assigned error to it.  The order declared Horst to be the prevailing party in defending

against the Hofbauers' claim of adverse possession.

Notwithstanding this ruling, the court engaged in a lengthy colloquy on the merits

of the parties' arguments when deciding attorney fees.  Ultimately, the Hofbauers

conceded "there was no claim for relief against Ms. Horst in the petition," and further

conceded "that to the extent there was a claim against her, it was resolved in her favor at

summary judgment."  RP at 59.  After reviewing the complaint and the Hofbauers'

response to discovery requests, the court concluded that the complaint asserted a claim of

adverse possession against Horst and granted Horst's request for fees.

We conclude that the trial court did not err in concluding that the complaint

alleged a claim of adverse possession against Horst.  The complaint named Horst as a

party and alleged a claim of adverse possession.  While the Hofbauers claim that they

---

[6] In their notice of appeal, the Hofbauers list the judgment quieting title among the orders to be reviewed, but they do not list the order granting summary judgment.  And although designated in the notice, the Hofbauers do not assign error to—nor provide argument regarding—the judgment quieting title in their appeal.

26

named Horst in the complaint but did not actually bring a claim against her, it was within the court's discretion to find otherwise. The court did not err in concluding that Horst was entitled to attorney fees under RCW 7.28.083(3) for successfully defending against the Hofbauers' complaint.

Next, the Hofbauers argue the trial court improperly awarded Horst attorney fees for prevailing on her adverse possession counterclaim because the counterclaim was permissive.

As set out above, RCW 7.28.083(3) permits the court to award costs and fees to "[t]he prevailing party in an action asserting title to real property by adverse possession." Here, Horst asserted a claim against the Hofbauers to quiet title based on adverse possession, and she prevailed on that claim on summary judgment. As such, Horst is eligible for a fee award under RCW 7.28.083(3).

The Hofbauers argue this issue turns on whether Horst's counterclaim was compulsory or permissive. They contend Horst's claim was permissive because the original complaint asserted a claim only against Dement regarding the western boundary, whereas Horst's claim concerned a different fence and a different boundary line. The Hofbauers point to *C-C Bottlers, Ltd. v. J.M. Leasing, Inc.*,[7] to support their position that fees cannot be awarded for permissive counterclaims, even when factually related.

---

[7] 78 Wn. App. 384, 896 P.2d 1309 (1995).

This argument unnecessarily overcomplicates the issue.  Whether Horst's claim for adverse possession is characterized as a compulsory counterclaim or a permissive one is irrelevant.  Horst's counterclaim was an action asserting title to real property by adverse possession and Horst prevailed on that claim.  Attorney fees for bringing a claim of adverse possession are expressly provided by statute.  The trial court did not err in awarding Horst attorney fees for succeeding on her counterclaim for adverse possession.

B. *Dement's Fees for Defending Against the Hofbauers' Adverse Possession*

   *Claim*

The Hofbauers argue that Dement was not eligible for fees incurred to defend against the Hofbauers' complaint because he was not the prevailing party in an adverse possession claim.  The Hofbauers assert that a party prevails only if it receives a favorable final judgment, and there was no final judgment on the Hofbauers' claim because they voluntarily dismissed it before trial.  We disagree.

"[A] party's voluntary dismissal of a claim results in the other side being deemed the prevailing party."  *Carter v. C&K Contracting, Inc.*, 35 Wn. App. 2d 41, 52-53, 573 P.3d 914 (2025); *Andersen v. Gold Seal Vineyards, Inc.*, 81 Wn.2d 863, 868, 505 P.2d 790 (1973).  Here, the Hofbauers voluntarily dismissed their claim of adverse possession against Dement.  As such, Dement is deemed the prevailing party in an adverse possession claim.  Accordingly, he is eligible for a fee award under RCW 7.28.083(3).  *See Carter*, 35 Wn. App. 2d at 52 ("Once the neighbors voluntarily dismissed their adverse possession

28

counterclaims, the [other party] became the prevailing party and became entitled to costs

and reasonable attorney fees in accordance with [RCW 7.28.083].").

The Hofbauers argue that the voluntary dismissal of their claim without prejudice

did not create a prevailing party because no final judgment was rendered.  They point to

*Wachovia SBA Lending, Inc. v. Kraft*[8] to support their position.

In *Wachovia*, the court considered an attorney fee award under RCW 4.84.330

following voluntary dismissal of a contract claim under CR 41.  165 Wn.2d at 488.  As

used in RCW 4.84.330, "'prevailing party' means the party in whose favor final

judgment is rendered."  Thus, the *Wachovia* court was tasked with determining "whether

a plaintiff's voluntary dismissal without prejudice is a final judgment rendered in favor of

the defendant, entitling the defendant to attorney fees."  165 Wn.2d at 490.  It held that "a

voluntary dismissal is not a final judgment rendered in favor of the defendant," and thus

concluded that the defendant was not "considered a prevailing party under RCW

4.84.330." *Id.* at 492.

The Hofbauers' reliance on *Wachovia* is misplaced because *Wachovia*

contemplated an award under RCW 4.84.330 whereas RCW 7.28.083 is the operative

statute here.  And RCW 7.28.083 does not define "prevailing party" or otherwise

predicate a fee award on obtaining a final judgment—RCW 4.84.330 does.  As such,

---

[8] 165 Wn.2d 481, 200 P.3d 683 (2009).

*Wachovia* did not "reject" the "general rule" that a defendant is entitled to fees following a plaintiff's voluntary dismissal, as the Hofbauers contend.

Finally, the Hofbauers advance two arguments challenging this court's recent holding in *Carter* where we stated: "where a party asserts a continued right to title to real property by adverse possession, that party's dismissal of their adverse possession claim without prejudice does not render RCW 7.28.083(3) nonoperative." 35 Wn. App. 2d at 53.

First, the Hofbauers contend *Carter* is factually distinguishable because the Hofbauers have not *asserted* a continued right or "'signaled their intent to pursue a claim of adverse possession'" after dismissal. Reply Br. at 26 (quoting *Carter*, 35 Wn. App. 2d at 53). They further state that "*Carter* merely held that a voluntary dismissal without prejudice creates a prevailing party under the adverse possession statute _when_ a party maintains a right to adverse possession." Reply Br. at 27. This argument is unpersuasive because a party maintains their right to adverse possession by voluntarily dismissing their claim without prejudice. Here, the Hofbauers asserted their continued right to adverse possession by arguing for dismissal without prejudice and they successfully retained their right to refile the claim.

Second, they argue *Carter*'s holding is legally incorrect because it conflicts untenably with *Wachovia*. The Hofbauers state that in *Wachovia*, "the Court held that a voluntary dismissal 'is not a final judgment' and leaves the parties 'as if the action had never been brought.'" Reply Br. at 27 (quoting *Wachovia*, 165 Wn.2d at 492). This

30

argument fails because, as discussed above, *Wachovia* evaluated a fee award under RCW 4.84.330 whereas RCW 7.28.083 does not require a final judgment to determine a prevailing party.

In sum, once the Hofbauers voluntarily dismissed their adverse possession claim, Dement became the prevailing party and became entitled to costs and reasonable attorney fees in accordance with RCW 7.28.083. *See Carter*, 35 Wn. App. 2d at 52-53. The definition of prevailing party under RCW 4.84.330 requiring a final judgment does not apply.

### C. *Dement's Fees for Prevailing on his Ejectment Claim*

The Hofbauers contend the trial court erred by awarding attorney fees to Dement for prevailing on his counterclaim for ejectment because the statute applies only to an action asserting title by adverse possession. Dement argues he was compelled to assert the ejectment claim as a necessary defense and compulsory counterclaim to adverse possession.

A compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." CR 13(a). Under CR 13(a), a party must assert its compulsory counterclaims as part of the action or those claims are forever barred. *Atlas Supply, Inc. v. Realm, Inc.*, 170 Wn. App. 234, 238, 287 P.3d 606 (2012). On the other hand, a permissive counterclaim is "any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing

31

party's claim." CR 13(b). Permissive counterclaims "do not affect, nor are they affected by, the outcome" of the original claim. *C-C Bottlers*, 78 Wn. App. at 387.

Here, Dement was required to assert his claim for ejectment in the Hofbauers' action asserting adverse possession or his claim would be forever barred. Dement's ejectment claim was a compulsory counterclaim because it concerned his rights to the exact piece of real property the Hofbauers sought to quiet title to. As such, RCW 7.28.083 provides for Dement's fees for prevailing on his ejectment claim as a necessary response to the Hofbauers' action.[9]

### D. Lodestar Method

The Hofbauers contend that even if Dement or Horst were eligible for a fee award, the trial court failed to make adequate findings supporting Horst's fee award and neither

---

[9] Dement requested—and the trial court granted—fees for work on his counterclaim only up to the point the Hofbauers dismissed their complaint. In his brief, Dement concedes that "[o]nce the Hofbauers' adverse possession claim was dismissed, time spent thereafter was excluded from the attorney fee request. The case at that point no longer involved an adverse possession claim, and therefore, RCW 7.28.083 did not apply." Resp't's Br. at 60. However, "where a party asserts a continued right to title to real property by adverse possession, that party's dismissal of their adverse possession claim without prejudice does not render RCW 7.28.083(3) nonoperative. In other words, the action continues to be one in which a party asserts title to real property by adverse possession." *Carter*, 35 Wn. App. 2d at 53. As such, the court had discretion to award the entirety of Dement's fees—even those incurred after the Hofbauers dismissed their complaint—if he had so requested.

32

of the fee awards were reasonable. They argue that improper billing practices—block billing that failed to segregate fees between claims and parties, vague and duplicative entries, and speculative or anticipated fees—prevented the court from performing a thorough, independent analysis to support the fee awards.

We conclude that most of the Hofbauers' contentions were not preserved for appeal and we limit our review accordingly. Ultimately, we determine the court properly applied the lodestar method to both fee awards and find no abuse of discretion.

### i. Error preservation

Under RAP 2.5(a), this court may refuse to review a claim of error that was not raised in the trial court. Requiring error preservation through objections "serves the goal of judicial economy by enabling trial courts to correct mistakes and thereby obviate the needless expense of appellate review and further trials." *State v. Lazcano*, 188 Wn. App. 338, 356, 354 P.3d 233 (2015).

The failure to object and call the court's attention to any perceived legal errors will generally waive review of the issues on appeal. *See, e.g.*, *Mullor v. Renaissance Ridge Homeowners' Ass'n*, 22 Wn. App. 2d 905, 919, 516 P.3d 812 (2022) (noting that a fee issue was not preserved for review when the attorney "did not object to the fee award, did not challenge the amount awarded, and did not call any errors in computing the award to the trial court's attention").

Here, the Hofbauers limited their objections below to whether Horst and Dement were eligible to be awarded fees for work performed on certain claims and motions. The Hofbauers made no specific objections to any line item of the billing records, nor to the reasonableness of the quantity of time expended or hourly rate charged. The Hofbauers did not object to any instances of block billing and they did not challenge Nutley's explanation of how she allocated expenses between Horst and Dement.

On appeal, the Hofbauers identify a single billing entry dated January 27, 2025 to "illustrate" the allegedly problematic block billing. Appellant's Br. at 66. In reply, they attempt to expand their untimely objection to fifteen additional "defective" entries.

Because none of these arguments were raised below, we limit our review accordingly. *See* RAP 2.5; *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (a party may not assert an argument for the first time in their reply brief).

### ii. Application

Washington courts follow the lodestar method to calculate attorney fee awards. *State v. Carey*, 15 Wn. App. 2d 817, 821, 478 P.3d 644 (2020). First, the court determines the lodestar amount by multiplying a reasonable number of hours times a reasonable hourly rate. *Id.* The lodestar amount may then be adjusted up or down in appropriate cases. *Id.* The burden of justifying a deviation from the lodestar amount rests with the party requesting the deviation. *Id.*

34

To determine if the number of hours expended was reasonable, the attorney must provide documentation of the work performed. *McGreevy v. Or. Mut. Ins. Co.*, 90 Wn. App. 283, 292, 951 P.2d 798 (1998). "That documentation must include, at a minimum, (1) the number of hours worked; (2) the type of work performed; and (3) the category of attorney who performed the work." *Id.* "'An explicit hour-by-hour analysis of each lawyer's time sheets is unnecessary so long as the award is made with a consideration of the relevant factors and reasons sufficient for review are given for the amount awarded.'" *Id.* (internal quotation marks omitted) (quoting *Absher Const. Co. v. Kent School Dist. No. 415*, 79 Wn. App. 841, 848, 917 P.2d 1086 (1995)). "The awarding court should take into account the hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time." *Id.*

"When attorneys have an established rate for billing clients, that rate will likely be a reasonable rate." *Id.* at 293. "The court is not bound, however, by the attorney's usual fee and may consider the level of skill required by the litigation, time limits imposed by the litigation, the amount of the potential recovery, the attorney[']s reputation, and the undesirability of the case." *Id.*

The court must take an active role in determining the amount of fees to be awarded. *Berryman v. Metcalf*, 177 Wn. App. 644, 657, 312 P.3d 745 (2013). It should not simply accept the fee affidavits submitted by counsel unquestioningly. *Id.* An

35

adequate record must be developed to support the trial court's decision. *Mullor*, 22 Wn. App. 2d at 919-20.

Here, the court's findings are adequate and supported by the record; and the findings demonstrate the court actively and independently assessed the reasonableness of the fee awards using the lodestar method.

For each defendant, Nutley submitted documentation identifying the number of hours worked, the nature of the work performed, and the category of timekeeper for each entry, including counsel, her supervising attorney, and a paralegal. The declarations further explained each timekeeper's billing rate and experience, providing an adequate basis for the court to evaluate the reasonableness of the rates.

Nutley also demonstrated that the hours submitted were reasonable and nonduplicative. She reduced her fees to account for the higher billing rate of her supervising attorney and adjusted entries to ensure her work was properly allocated between Horst and Dement, given the joint representation. Time attributable solely to Dement was removed from Horst's billing records and vice versa. Shared work was apportioned, either on a 50/50 basis or using a 70/30 allocation based on the relative focus of the work. The billing records reflect these allocations and include descriptions of the work performed for each entry. This level of detail satisfies the documentation requirements articulated in case law and permits meaningful review.

36

Regarding Horst's request, the court conducted a hearing, reviewed the pleadings, summary judgment materials, and relevant case law, and expressly recognized the lodestar method as the governing standard. It considered the relative strength of the claims. It also considered whether equitable factors, such as the parties' financial circumstances, might bear on the award.

The court scrutinized the inclusion of paralegal time, identified a deficiency in the record regarding the paralegal's qualifications, and required a supplemental affidavit before making a final ruling. After supplementation, the court revisited the lodestar analysis, determined the paralegal work was legal in nature, and found the requested fees reasonable.

Regarding Dement's request, the court conducted a hearing and then took the matter under advisement before issuing a written ruling with its findings. The court did not accept all aspects of the request. It declined to award paralegal fees, explaining that the hours were not sufficiently summarized for inclusion in the lodestar calculation and that many entries appeared nonlegal in nature. However, it found the overall fees just and equitable, determined that the allocations between defendants were fair and appropriate, and noted that those allocations were uncontested. The court also considered whether time spent on unsuccessful motion practice should be excluded and concluded that such time was properly included in the award.

In sum, the court developed an adequate record, evaluated the relevant factors, and articulated its reasoning in both oral and written rulings. Its findings demonstrate an independent application of the lodestar method and are supported by the record.

We conclude that RCW 7.28.083 provided a proper legal basis for the fee awards and the court did not abuse its discretion in awarding attorney fees.

5.   ATTORNEY FEES ON APPEAL

Dement and Horst request attorney fees under RCW 7.28.083 as prevailing parties in an adverse possession claim. The Hofbauers argue Dement and Horst do not provide sufficient legal authority to support their request because the statute does not authorize a fee award on appeal.

The court may award reasonable attorneys' fees to the "prevailing party in an action asserting title to real property by adverse possession . . . if, after considering all the facts, the court determines such an award is equitable and just." RCW 7.28.083(3). This statute applies to fee requests in the trial court and on appeal. *See Workman v. Klinkenberg*, 6 Wn. App. 2d 291, 308-09, 430 P.3d 716 (2018). Additionally, "where a party asserts a continued right to title to real property by adverse possession, that party's dismissal of their adverse possession claim without prejudice does not render RCW 7.28.083(3) nonoperative. In other words, the action continues to be one in which a party asserts title to real property by adverse possession." *Carter*, 35 Wn. App. 2d at 53.

38

Here Dement and Horst continue to be prevailing parties in an adverse possession action. As such, they are eligible for reasonable attorney fees under RCW 7.28.083(3). Moreover, it is equitable and just to grant Dement and Horst their fees, given the totality of the circumstances. They are prevailing parties, the court below determined such award was equitable and just, and the Hofbauers fail to prevail on any of their issues on appeal. Therefore, we award Dement and Horst reasonable attorney fees on appeal.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, C.J.

WE CONCUR:

_____
Hill, J.

_____
Murphy, J.